HEARD APRIL TERM, 1871.

## WELSH *vs.* DAVIS.

An assignment for the benefit of creditors, giving the assignee power to sell the real estate "at such time, * * * in such manner, and upon such terms as he may deem expedient and prudent," does not give the assignee power to bind the assigned estate by an express covenant of warranty ; nor does such power exist by implication of law.

A purchaser of real estate, from an assignee for the benefit of creditors, with covenant of warranty, has no equity to subject the assigned estate to a claim arising from a breach of the covenant.

BEFORE THOMAS, J., AT LANCASTER, JANUARY TERM, 1871.

Cureton and Hasseltine were joint owners of a lot in the town of Lancaster, under a conveyance from Massey.

On March 19, 1860, Cureton made an assignment of his estate for the benefit of his creditors, to Cunningham as trustee, the assignment containing a power authorizing the trustee to sell the real estate " at such time consistent with reasonable despatch, and in such manner and upon such terms as he may deem expedient and prudent."

On January 8, 1861, Hasseltine, in his own right, and Cunningham, as assignee, joined in a sale of the lot to John R. Welsh, the plaintiff. Their deed of conveyance contained the usual covenant of warranty.

Cunningham died, and in the year 1868 John A. Davis, the defendant, was substituted by the Court of Equity as trustee of the assigned estate.

Massey also died in the year 1867, and in April of that year his widow filed her bill in equity against Welsh, claiming dower in the lot. The claim was established, and in June, 1868, she obtained a decree against Welsh for $370.72, inclusive of costs, which he paid.

Hasseltine was adjudged bankrupt, on his own petition, and was afterwards discharged in bankruptcy.

On January 17, 1870, Welsh filed this petition against Davis, Hasseltine, and Kibler as administrator of Cunningham, wherein he claimed that the $370.72, paid by him to the widow of Massey, in lieu of dower, should, with interest thereon, be refunded to him out of the assigned estate, in the hands of Davis.

The case was referred to a referee, who made his report, recommending that the petitioner be paid the amount of his claim, with interest, out of the assigned estate.

Davis filed exceptions to the report, as follows :

1. Because Cunningham could not, by his covenant of warranty, bind the assigned estate of Cureton.

2. Because the covenant of warranty could not extend to the rents of the lot, and the referee erred in charging the same against the defendant.

3. Because the referee erred in charging the defendant with the costs of the dower suit.

His Honor overruled the exceptions, and made a decree confirming the report.

Davis appealed, on the ground that his Honor erred in overruling the exceptions.

*Moore,* for appellant :

The covenant of warranty was the mere personal contract or undertaking of Cunningham, for which he alone became responsible.

"A person who conveys merely as trustee, can be required to enter into no covenants for title beyond the usual covenant that he has done no act to encumber."—Hill on Trust., 281.

Where trustees agreed to exonerate the estate sold, from any incumbrances, the Court refused to enforce a specific performance of the agreement so as to compel them to exonerate the estate, but left the purchaser to his remedy by action for damages.— *Wedgewood* vs. *Adams,* 6 Beav., 600 ; cited in Hill on Trust., 282.

In *McBeth* vs. *Smith,* 3 Brev., 511, Smith, J., in delivering the opinion of the Court, says : "I would not pretend to say that an administrator should in no case be allowed to contract debts that should bind the estate of his intestate ; but if he does so, and in many instances it is necessary he should do so, he alone will be liable to the creditor, and his only indemnity is by retaining so much from the profits of the estate," &c.

In *O'Neall* vs. *Abney*, 2 Bail., 317, the Appeal Court holds the following language: "It has been held, upon very clear principles, that an executor or administrator, or other person acting in a fiduciary character, cannot, by any contract of his own, create a charge upon the property or estate which he represents, not even in equity, unless the estate or property has been benefited by the contract, and they are in advance;" and in conclusion lays down the rule that, "if a liability on their part does arise, it is personal, and they alone are liable."

In *Mayer* vs. *Galluchat*, 6 Rich. Eq., 1, the doctrine is laid down in these words: "Parties must look to those with whom they contract. The trustee is the legal owner of the estate. If persons are unwilling to give credit to the *cestui que* trust, they must contract with the trustee or refuse the credit altogether. If they contract with the trustee, it is still a legal demand, for which they have a legal remedy, and the trustee may reimburse himself from the income, provided the charge be proper."

2. If any benefit inured to the assigned estate from the covenant of warranty, by whom was the benefit conferred? Certainly not by the purchaser, for the covenant was not made by him, but made by Cunningham and Hasseltine, for his protection and benefit.

3. If an incidental benefit to the assigned estate arose out of the covenant, to what extent was it benefitted? No evidence was offered to show that the price at which the lot was sold was enhanced thereby. If it can be assumed that it was enhanced to the value of the widow's dower, then, as only one-half of the property belonged to the assigned estate, it was only benefitted to the extent of one-half of the dower.

4. If the assertion of the right of dower, by the widow, amounted to a breach of the covenant contained in the deed, then the plaintiff Welsh should have brought his action at law against the covenantors, or their representatives, and his petition in Equity should be dismissed as to all of the defendants, but especially as to the defendant Davis, against whom he never had a right of action, even at law.

*Allison*, contra:

The present case differs from one where a trustee contracts of his own will for the trust estate; for here Cureton in his deed of assignment expressly empowered Cunningham, in the most comprehensive terms, to sell the house and lot, and, as a necessary consequence, clothed them with authority to make the covenant of warranty

which he did make. " A power to sell implies a power to warrant, in the cases, and to the extent, in which a warranty usually accompanies the sale."—Chit. on Con., 200, and the numerous United States cases referred to in a note. " A power without restriction to sell and convey real estate has been held to give authority to the agent to execute deeds with general warranty, binding the principal."—Chit. on Con., same page, and the following and other cases referred to in the note; *LeRoy* vs. *Beard*, 8 How., U. S., 451 ; *Taggart* vs. *Stanbery*, 2 McL., 543.

If the assigned estate of Cureton be responsible to the estate of Cunningham for loss incurred by reason of this covenant of warranty, then, to prevent circuity of action, equity will assume jurisdiction, and allow Welsh to proceed directly against the assigned estate.

The sale of the land was certainly enhanced by the covenant of warranty ; and the purchase money so increased, as paid by Welsh, must be considered as *having increased* the amount of the assigned estate and *added value* to the same.

" The equity on which a creditor comes into this Court to render a *trust estate* liable to the payment of his debt, is this, that he has advanced his money, or given credit to effect the objects of the trust, and having accomplished this, at his own expense, he has a right to be put in the place of the *cestui que* trust, or to be reimbursed out of the trust funds. *To expend money for the benefit of a trust estate, would seem to mean adding value* to the estate, or the defraying of charges to which the trust estate would be liable."—*Magwood & Patterson* vs. *Johnson*, 1 Hill. Ch., 232-4 and 5.

" In the execution of a general power there can be *no rule* but the discretion of the party to whom it is confided."—*Fronty* vs. *Fronty*, Bail. Eq., 517.

" Dower claimed and allowed is a breach of a covenant for quiet possession."—*Lewis* vs. *Lewis*, 5 Rich., 12.

" Verdict rendered against purchaser is conclusive against vendor, who has been vouched to defend his title."—*Wilson* vs. *McElwee*, 1 Strob., 66.

" Suit must be defended before breach of warranty can be shown."—*Buckels* vs. *Mouzon*, 1 Strob., 499.

Oct. 27, 1871. The opinion of the Court was delivered by

WILLARD, A. J. The appellant was appointed by the Court of Equity trustee of an estate, assigned for the benefit of creditors,

upon the death of the assignee. Respondent makes a demand against the assigned estate, on the ground, that under a sale, made by the assignee, of real estate, part of such assigned estate, respondent became a purchaser; that the assignee gave a deed, with a covenant of warranty, and that respondent has sustained damages through a breach of such covenant.

The case, as presented by respondent's argument, involved two questions: first, had the assignee power to bind the assigned estate by a covenant of warranty? second, is a covenant of warranty to be implied from the fact of a sale and consideration paid?

It does not appear that the assignment, in express terms, conferred upon the assignee power to bind the estate by a covenant of warranty. If, then, he had such power, it must be made out by implication, based either upon the general terms and expressions of the assignment, or upon the nature of the power of an assignee for the benefit of creditors.

It has been urged that the terms of the assignment embrace such authority. The assignment authorizes the assignee to sell, "in such manner, and upon such terms, as he may deem expedient and prudent." The effect of these expressions is to give to the assignee an unrestricted power of sale. It is contended that a collateral warranty is fairly within the sense of the expression "terms of sale." Taken in an enlarged sense, this might be correct, but the nature and object of the instrument operates to limit the expression to a strict sense, which is satisfied by allowing to the assignee control over the consideration and conditions on which the sale is made. Respondent contends that such authority is necessarily involved in the unrestricted power of sale conferred on the assignee. It is said that a power without restriction to sell and convey real estate, gives authority to an agent to execute deeds, with general warranty binding the principal. This proposition is derived from the relation of principal and agent, where that relation exists in its simplest character, namely, where the title, the beneficial interest, and the power of ratification and revocation unite in the principal, and the agent acts solely as the hand of the principal. Such a relation does not exist in the present case. The assignment vested the title in the assignee, and the beneficial interest in the creditors, leaving in the assignor nothing but a resulting trust, should assets remain after the trusts are satisfied. If, then, the proposition advanced is applicable to the case in hand, it must rest on some other ground than that of a similarity between the relations involved in the two cases.

No such implication arises from the nature of the power of sale, for it is capable of being fully executed without the aid of a covenant of warranty. The covenant of warranty may, by possibility, make the sale more productive, but adds nothing to its completeness.

Neither does the object of the power of sale, in the case of an assignment for the benefit of creditors, furnish any ground for such an implication. The object of the assignment is to satisfy the demands of the creditors, by a voluntary surrender of that which, it must be assumed, might by process of law be subjected to such demands. For this purpose power is lodged in the hands of the assignee to convert the assigned assets into a form suitable for distribution, and to make distribution among the benficiaries. It is obvious that no authority should be implied tending to defeat or embarrass the accomplishment of this object, and it is equally clear that such authority as the respondent contends for, would have that effect. It would, perhaps, enable the assignor to realize a larger sum from the sale of the assigned estate applicable to the discharge of his debts, but at the expense of his creditors, who might thereby be subjected to unreasonable delay, and exposed to litigation and expense. It is said that it would enure to the benefit of creditors, by increasing the distributable fund ; but the same end may be obtained under orders in equity, (*Rogers* vs. *Hunt*, 6 Rich. Eq., 361,) without resort to an implication that would place in the hands of the assignee authority limited only by his discretion and prudence.

The state of relations, as created by the assignment, between the assignor, the assignee, and the creditors, precludes the application to the case of the principle contended for. In the case of principal and agent, the effect of its application is that a covenant is created in the name of, and for the benefit of, the principal, but no lien or charge arises affecting the proceeds of sale in the hands of the agent in order specifically to subject them to any claim for damages for a breach of the warranty. Yet this is the effect claimed as the result of applying that principle to the case in hand. It is not enough for the respondent to show that the assignee had power to bind the assignor by a covenant of warranty, for such an obligation could not be satisfied out of the assets. It is not disputed that the assignee may bind himself personally, but that gives no claim upon the assets. It will not be contended that the assignee had any authority to bind the beneficiaries under the assignment by a personal covenant.

It follows that, to reach the present case, it must appear that the assignee had authority to create either a legal or equitable lien or charge on the assets. In no way of viewing the proposition, as to the powers of an agent to bind his principal, can such operation be ascribed to it as that claimed in the present case.

An argument has been pressed, based upon the general powers of fiduciary agents. It is contended that the estate is chargeable for the act or contract of the trustee, where it has received benefit through such act or contract. It is claimed that the covenant of warranty enhanced the product of the sale of the land, and thus conferred a benefit on the estate, which is ground in equity for holding the estate liable to answer for the performance of the trustees' contract. It will be found that the rule on this subject, as practically applied by the Courts, is restricted within limits that would exclude the respondent's demand. It will be also found that the act or contract of the trustee, in order to bind the estate through the benefit derived, must be within his proper powers, as trustee, and that the benefit must be substantial and actual, and not merely speculative.

In *Magwood* vs. *Patterson*, (1 Hill Ch., 228,) an attempt was unsuccessfully made to charge an estate, in trust for a wife's separate use, with advances made for the domestic use of husband and wife. Ch. Harper, whose decree was adopted by the Appellate Court, says: "The equity on which a creditor comes into this Court to render a trust estate liable to the payment of his debt, is this, that he has advanced his money or given credit to effect the objects of the trust, and having accomplished the object of the trust at his own expense, he has a right to be put in the place of the *cestui que* trust, or to be reimbursed out of the trust funds." Again he says: "To expend money for the benefit of the trust estate, would seem to mean either adding value to the estate, or defraying charges to which the trust estate would be liable."

In *Carter* vs. *Eveleigh*, (4 Dess. Eq., 19,) the purchase of a gin, for the use of a trust estate, was sanctioned, it being requisite and proper, in order to render the trust estate, consisting of a plantation, productive.

In *Frazer* vs. *McPherson*, (3 Dess. Eq., 393,) slaves were purchased by a trustee, and a mortgage given for the purchase money. While no question was made in that case, as to the propriety of the investment, still the mortgage was held invalid for want of power in the trustee to create a lien or charge on the trust estate. That

case went to the length of holding that such lien or charge could not be created, even as to additions to the estate, accruing in the hands of the trustee.

In *Montgomery* vs. *Eveleigh*, (1 McC. Ch., 267,) advances made for the maintenance of slaves, part of a trust estate, were held to be chargeable to the estate.

The general rule that persons acting in a fiduciary capacity cannot, by any contract, create a charge upon the trust estate, even in equity, is recognized in *O'Neall* vs. *Abney*, (2 Bail., 317,) although exceptions of the class already alluded to are noticed.

We have already seen that, by the terms of the assignment, no power to warrant passed to the assignee, allowing its expressions in the sense demanded by the object of the assignment. Nor can such power be implied from the relative rights and obligations of the several parties affected by the assignment, unless it appears that some duty, incident to the obligation assumed by the assignee in respect to the assigned estate, demands the exercise of such power.

It is not enough that the trustee sees an opportunity of benefitting the trust estate, to warrant an enlargement of his powers, so as to secure such benefit. Such a principle would open to trustees a career of speculation quite inconsistent with the character of trusts. The true rule is that stated by Ch. Harper in *Magwood* vs. *Patterson*, which is, in effect, that the act or contract, in order to fall within the proper powers of the trustee, must be in the line of the discharge of his duties under the trust.

In the present case, the benefit claimed to have been realized by the estate is matter of speculative opinion alone. It is not in proof that the land sold for a larger price on account of the covenant of warranty; but we are called on to assume that fact as probable on the ground of argument alone. The respondent's case cannot, therefore, be brought within the principle of *Magwood* and *Patterson*; but, independent of this fact, it was no part of the assignee's duty, under the assignment, to warrant the title to the land, and no power is to be implied to do that which he was not called upon by his duty to do.

It only remains to consider the proposition advanced by the respondent, that a warranty of title is to be implied from the sale and consideration paid. It is well settled in this State that upon a sale of real estate no warranty is to be implied. In the early cases, where relief was granted to defendants sued at law for the purchase money of land, on the ground of a failure in the quality or quantity

of the subject of sale, such relief was, in some instances, said to re-sult from an implied warranty, based upon a full consideration paid, but later cases place the nature of this relief in a true light. In *Evans* vs. *Dendy*, 2 Speers, 9, the purchaser of land at an Ordinary's sale, after payment of the purchase money into the Ordinary's hand, and while the sum remained undistributed, sought to recover back the amount paid on the ground that the land had been recovered under title paramount. The Court refused to imply a warranty in favor of the purchaser, or to grant him relief. In the opinion of Judge Evans, the relief which had, since *Grey* vs. *Hankinson*, 1 Bay, 278, been frequently allowed to purchasers of land upon the authority of that case, was ascribed to the powers of the Courts of law in this State to allow, by way of defense to an action for the purchase money, the equitable defense of failure of consideration by reason of fraud, misrepresentation or mistake affecting the contract.

The authority of *Evans* vs. *Dendy* was recognized in *Rogers* vs. *Horn*, 6 Rich., 361. It was fully sustained by *Prescott* vs. *Holmes*, 7 Rich. Eq., 9, and in *Com.* vs. *Smith*, 9 Rich., 575, where, though a different doctrine as to implying warranty was applied to sales of personalty, still it was recognized that no such implication arose in the case of sales of realty.

The petitioner has established no right to be paid out of the assets, and the decree of the Circuit Court must be set aside and the peti-tion dismissed.

*Wright*, A. J., concurred.

*Moses*, C. J., absent at the hearing.